SUSAN M. WILLIAMS V. C. B. MERRIAM *et al.*
No. 14,290.   (83 Pac. 976.)

SUSAN M. WILLIAMS V. JAMES P. LODGE *et al.*
No. 14,447.   (83 Pac. 976.)   .

SYLLABUS BY THE COURT.

1. DOWER—*Release—Ownership of Proceeds.* In 1879 a widow sold and released her right of dower in her deceased husband's land in the state of Illinois to the then owner of the fee. *Held,* that, the state having no statute relating thereto, the common-law rule applied, and the consideration received for such release became the absolute property of the widow and did not remain a part of the decedent's estate, of which she had only a life use.

2. ———— *Mistake of Law and Fact—Release Void as to Decedent's Sons.* Where such widow, pending an action to have her dower assigned, enters into a written agreement with her attorney in that action, believing and relying upon his honest, but mistaken, advice that she will only be entitled to the use of the amount received for such release during her lifetime, and that at her death the same will go to the heirs of her deceased husband, and by such writing authorizes him to sell and release her dower right for $6000 and invest the amount in improved lands or real-estate mortgages so that she shall receive therefrom $400 annually, free of expense, and by such writing further provides that upon her death the $6000 shall be paid to the sons of her deceased husband or their heirs, and the attorney does sell and release her dower right for $6000 and receives and keeps the same invested for over twenty years, and then dies, leaving such sum invested in notes secured by real-estate mortgages, and the widow thereafter brings a suit to have the written agreement set aside, *held,* that as to the sons of the deceased husband the provision is void.

Williams v. Merriam.

3. —— *Innocent Purchasers.* Where such attorney, after receiving the $6000, buys a large tract of land and takes the deed to the same in his own name as "trustee," and pays the $6000 as a part of the purchase-price, and executes a mortgage as "trustee" to secure the remainder, and thereafter contracts to sell the land to the sons of the deceased husband, making provision for the payment of $400 annually to the dowress, and, after the sons have failed and the amount of the mortgages on the land has been increased to $12,000, the attorney, as trustee, deeds the land to two of his own sons, who assume and agree to pay the mortgage, and who secure the payment of the $6000 and interest by note and mortgage on this and other lands, *held,* that, as against the parties who have loaned money and taken mortgages on the land or have bought the land without any knowledge of the mutual mistake of the dowress and her attorney, or other knowledge of the circumstances except such as the law implies, the plaintiff is not in equity entitled to be adjudged the owner of the land free of encumbrances, except the amount of the mortgage for the remainder of the purchase-price, especially when she makes no offer to account for the $400 that she received annually from 1879 to the commencement of her suit, and there is no showing that such income was derived from the use of the land.

4. —— *Rights of the Widow.* Under these circumstances the plaintiff should be adjudged to be the equitable owner of the notes and mortgages given to secure the payment of the $6000.

Error from Greenwood district court; GRANVILLE P. AIKMAN, judge. Opinion filed December 9, 1905. *Williams v. Merriam et al.* affirmed; *Williams v. Lodge et al.* reversed.

STATEMENT.

THESE two cases arise from one suit commenced in the district court of Greenwood county, Kansas. The plaintiff sued the defendants in error, in case No. 14,-447, to have set aside a certain agreement entered into December 18, 1879, between herself and William E. Lodge, deceased, the father of the defendants in that case, and to have certain lands in Greenwood county, which William Lodge had bought, in part, with money obtained under the agreement, adjudged to be her

property, free and clear of the mortgages of record thereon in favor of the defendants in error in case No. 14,290, who were made defendants in the district court for that purpose. The defendants Merriam and the National Life-insurance Company filed separate general demurrers to the petition, claiming that it stated no cause of action as to them. The court sustained these demurrers, and to reverse this ruling the plaintiff brings case No. 14,290 here.

The defendants in error James P. Lodge and Charles V. Lodge, in case No. 14,447, also filed a general demurrer to plaintiff's petition, which the court overruled, and defendants answered, a trial was had without a jury, and judgment was rendered in favor of the defendants. To reverse this judgment the plaintiff brings case No. 14,447 here.

On the trial of the case between the plaintiff and the defendants James P. Lodge and Charles V. Lodge the court made the following findings of fact and conclusions of law:

"FINDINGS OF FACT.

"(1) Edward Williams and plaintiff, Susan M. Williams, were husband and wife, residing in Baltimore, Md., at the time of the death of the former, in February, 1864. The deceased left surviving him his widow, Susan M. Williams, and two sons, Edward M. and John F. Williams, as his only legal heirs. Said Edward Williams died seized of certain real estate, among which was a large tract of land in Piatt county, Illinois.

"(2) At the time of the death of said Edward Williams the laws of Illinois provided that the widow should have dower in all lands of which her husband died seized, such dower being the one-third thereof for her use during her lifetime. Said laws provided for the assignment of dower, through commissioners appointed by the circuit court of the county in which the lands were situated, by setting apart to the widow one-third in value of the real estate, such assigned portion to be particularly described by metes and bounds. In case the property was not susceptible of division without great injury the yearly value of the widow's

dower should be ascertained, and judgment rendered that the value so assessed should be paid in lieu of dower during her natural life. The law as to the widow's dower and the assignment thereof continued in force, without substantial change, at the times hereinafter stated.

"(3) Susan M. Williams continued a resident of Baltimore after her husband's death, and seems not to have been informed for several years thereafter so as to understand what were her legal rights in the Illinois lands. In January, 1878, a suit was commenced in the circuit court of Piatt county, Illinois, by Susan M. Williams, for an assignment of dower in the said lands situated in that county. In such suit William E. Lodge, of Monticello, the county-seat of Piatt county, was her attorney. The defendants in that suit were Edward M. and John F. Williams, Richard Dempsey and others who claimed an interest in the lands. September 4, 1879, Dempsey filed his answer setting up absolute title in himself under foreclosure of mortgage and trust deeds that had been executed by Edward M. and John F. Williams, and conveyances made pursuant thereto. He also pleaded the statute of limitations as a bar to the plaintiff's suit. On February 7, 1880, this suit was dismissed on motion of plaintiff's attorney, no proceedings having been had therein beyond the filing of the bill of complaint of the plaintiff and the answer of Dempsey. The dismissal was had because of the settlement made as hereinafter found.

"(4) About the year 1869, Edward M. and John F. Williams went to Illinois and took possession of those lands in Piatt county. Edward M. Williams, some time prior to 1879, conveyed his interest in the lands to John F. Williams, who continued in the actual occupancy of the lands until 1880, part of the time as owner and part of the time under a lease from Richard Dempsey, who had acquired the title of Edward M. and John F. Williams, as stated in the next following finding.

"(5) Some time prior to 1879 Richard Dempsey became the owner of certain mortgages and trust deeds on the Piatt county lands, executed by John F. Williams, after he had acquired the title of Edward M. Williams, to secure money loaned. Under foreclosure proceedings the Williams title, except such as might thereafter accrue to them on the death of plaintiff and the cessation of her dower interest or under the re-

demption law of Illinois, passed to Richard Dempsey, prior to December, 1879. The indebtedness due Dempsey, which was secured by such instruments, amounted to about $36,000. After Dempsey had so acquired title, he agreed with John F. Williams that if the latter found a purchaser for the lands, he (Williams) might have all of the purchase-money over and above $36,000.

"In the fore part of December, 1879, John F. Williams found a purchaser for said lands and contracted to sell them for $50,000. The sale was afterward effected, a conveyance of the lands made, and the $50,-000 paid, $36,000 going to Dempsey and $14,000 being deposited in a bank at Monticello in the name of William E. Lodge, trustee. Those payments were made after the transaction stated in the next succeeding finding.

"(6) After a purchaser for the land had been procured there were interviews between Dempsey's attorney, J. B. McKinley, and William E. Lodge and John F. Williams, with reference to the settlement of the plaintiff's dower claim against the lands. Pursuant to such interviews, and immediately thereafter, William E. Lodge and John F. Williams visited the plaintiff in. Baltimore and had various talks with her, during the three or four days they were there, concerning her dower in the Illinois lands. As a result of this visit the agreement of December 18, 1879, was executed, authorizing William E. Lodge to sell plaintiff's dower right for not less than $6000, and to release her dower right in said lands. A copy of this agreement is attached to plaintiff's petition herein and is made part of this finding.

"(7) Before said trust agreement was made said Lodge, in the presence of John F. Williams, advised the plaintiff that she had only a life-interest in the money which might be received for the sale of her dower right; that Edward M. and John F. Williams were entitled to the principal after her death, and that she could not use the principal; and such was the law of Illinois at that time.

"(8) At the time said trust agreement was entered into the plaintiff was ignorant of the laws of Illinois and of her dower right thereunder. She relied upon the statements made to her by William E. Lodge as to her legal rights, and when said agreement was made believed that her only legal right to the $6000 named therein was the use thereof for her natural life, and

that the principal belonged to Edward M. and John F. Williams, to go to them at her death; and such was the law of Illinois at that time.

"(9) No assignment of dower in the Illinois lands was made there to the plaintiff. Under the law of that state assignments of a gross sum in lieu of dower could not be made except by agreement of the heir and all parties in interest.

"(10) When said trust agreement was made plaintiff was not informed of the condition of the Illinois lands, or of the fact that a sale of them had been negotiated out of which $13,000 or $14,000 would be realized for John F. Williams, but understood that something over $6000 would be obtained for the settlement of her dower right. The sum of $6000 was agreed upon as sufficient to yield her an annual income of $400, which amount she stated she wished. The plaintiff understood from what was said to her by Lodge and Williams that the latter had creditors who might seize upon any money he received, and at Lodge's suggestion the agreement provided for the payment to Rachel Estelle Williams, wife of John F. Williams, of any money received for the dower right in excess of $6000.

"(11) Said agreement authorizing William E. Lodge to sell the dower right and dispose of the $6000 and surplus money, as therein provided, was entered into on the part of Susan M. Williams upon the advice and at the suggestion of said Lodge. In that matter she did not have the advice of any other person.

"(12) After securing said written agreement of December 18, 1879, from plaintiff, William E. Lodge and John F. Williams returned to Monticello, the sale spoken of in the above finding was consummated, and the money paid—$2500 of this was paid to Rachel Estelle Williams, and the balance, after setting apart $6000, was paid out on various accounts for the benefit of John F. Williams.

"(13) The lands described in plaintiff's petition were purchased in 1880 by William E. Lodge, and in December, 1880, the same were conveyed to him by the former owner and the deeds duly recorded. In the deeds of conveyance the grantee was named as 'William E. Lodge, trustee.' The consideration named in the deeds of conveyance is $8800, but the actual consideration was $9400. At the time of said purchase said Lodge and Edward M. and John F. Williams made

the agreement dated December 18, 1880, a copy of which is attached to plaintiff's petition as 'Exhibit B.'

"Six thousand dollars of the purchase-money of said land was paid by the $6000 received by Lodge for the plaintiff's dower right. Edward M. and John F. Williams did not pay anything thereon, as they had agreed, and the balance of the purchase-price, viz., $3400 and interest, was paid out of the proceeds of a loan secured by a mortgage on the land. Because objection was made by the loan company to accepting a mortgage from him, on account of his designation 'trustee,' and for the sole purpose of effecting a loan, on January 2, 1882, Lodge, describing himself as 'trustee' in the granting clause, deeded said lands to Edward M. and John F. Williams. On the same day said last-named grantees executed a mortgage on said lands to T. B. Sweet, trustee, to secure the payment of $5000. The $5000 was thus obtained, the balance of the purchase-money paid, and the surplus used for the personal benefit of the mortgagors. On said January 2, 1882, Edward M. and John F. Williams reconveyed said lands, together with an additional quarter-section which the Williamses had purchased, to William E. Lodge, trustee. These deeds and the mortgage were duly recorded in the office of the register of deeds of Greenwood county, Kansas. Subsequently Lodge made other loans, executing mortgages therefor on the lands described in the petition, until he had placed thereon an encumbrance of $12,000. The money so obtained was used to pay off the prior mortgages, and to assist the Williamses, who were carrying on the stock and farming business on the land.

"(14) Edward M. and John F. Williams not being able successfully to handle said lands, on November 15, 1892, William E. Lodge, trustee, conveyed said lands, including the additional quarter-section conveyed to him by the Williamses, to his sons, the defendants James P. and Charles V. Lodge. The consideration recited in their deeds of conveyance is $18,000, the grantor is described as 'trustee,' and in the deed the grantees assumed the payment of the $12,000 mortgage on the land. Said grantees, as a part of the consideration of said conveyances, also gave to William E. Lodge two non-negotiable notes, for $3000 each, to cover said trust fund of $6000, agreeing to pay interest thereon at the rate of seven per cent. per annum, and, at the death of Susan M. Williams, to pay the

principal as provided in the trust agreement mentioned in the sixth finding. These notes were not secured. In December, 1895, two notes for $3000 each, similar to the first notes, were given in renewal, and a mortgage to secure them executed on the lands conveyed by Lodge to his sons and 160 acres in addition thereto. This mortgage was never filed for record, and, at the death of William E. Lodge, was found with the notes among his papers by his executors. Edward M. and John F. Williams also executed to James P. and Charles V. Lodge a quitclaim deed, releasing and assigning any interest they might have in the trust lands, and also executed a warranty deed conveying to the same grantees about 200 acres of other adjoining land which they owned.

"Said Edward M. and John F. Williams also at the same time sold and transferred to said James P. and Charles V. Lodge certain personal property on the farm on which William E. Lodge held a mortgage for $4000, which the Williamses owed him for moneys he had advanced to them or paid out on their account. This debt of $4000 was assumed by the Lodges, the greater portion of it afterward paid to their father, and the balance donated by him to them. James P. and Charles V. Lodge took possession of said lands immediately after said conveyance to them and have been in possession ever since.

"After said conveyance James P. and Charles V. Lodge renewed the said $12,000 mortgage and since then have paid the interest thereon, and there remains on the lands described in the petition and the additional quarter-section a lien for said sum.

" (15) When said conveyance was made to James P. and Charles V. Lodge they had actual knowledge that the $6000 which had been set apart by the agreement of December 18, 1879, for Susan M. Williams had been by their father invested in said lands, and they knew that such agreement had been made, but they had no knowledge of the circumstances under which it was made, or of the statements then made as to the plaintiff's right to said money, or any advice given to her by their father.

" (16) The plaintiff was not consulted about the purchase of the lands in question, but was informed soon after the purchase was made that the $6000 had been so invested. She had no actual knowledge of the subsequent conveyances and mortgages which were

executed by Lodge, and did not know that the land had been conveyed to James P. and Charles V. Lodge until a short time before the commencement of this suit.

"(17) William E. Lodge died September 24, 1901. No trustee has been appointed to succeed him.

"(18) The plaintiff continued of the belief that, under the laws of Illinois, she had only a life-interest in the money paid for the sale of her dower right, until some time subsequent to April, 1902, when she was informed that she had been.misled as to her legal rights thereto, and was advised that the $6000 was, when paid, her absolute property to do with as she pleased.

"(19) Subsequently to the time when William E. Lodge obtained the $6000, as hereinbefore found, and down to the institution of this suit, the $400, which said trust agreement provided should be paid annually to the plaintiff, was paid to her.

"(20) The defendants Edward M. Williams, John F. Williams, jr., J. R. Williams, Jennie DeGoy Reynolds, Nellie Williams and Mamie Williams are the children of John F. Williams.

"Edward M. Williams died a resident of the state of Missouri in November, 1901, leaving said John F. Williams his sole heir at law.

"(21) The lands described in plaintiff's petition, being the lands purchased with the trust fund, are now of the value of $30 per acre and of the total sum of $19,450, and the total land securing plaintiff's annuity of the value of $28,620.

"The mortgage for $12,000 is still held against said lands by the defendant the National Life-insurance Company."

"CONCLUSIONS OF LAW.

"(1) The plaintiff had a dower interest only in the sum of $6000, the subject of the trust agreement between herself and William E. Lodge of date December 18, 1879.

"(2) The advice given by William E. Lodge to the plaintiff prior to the execution of the trust agreement of December, 1879, as to the character of her interest in the moneys she had or might procure on account of her suit for the assignment of dower was a correct statement of the law of Illinois, assuming the giving of said advice to have been proved by competent testimony.

"(3) The evidence of plaintiff by which she sought to prove the conversations between herself and William

E. Lodge which led up to the making of the trust agreement of December, 1879, is incompetent under the statute.

"(4) The evidence of the witness J. F. Williams as to conversations between plaintiff and William E. Lodge which led up to the making of the trust agreement of December, 1879, and the transactions which eventuated in said trust agreement, was evidence of a transaction and communication had between the assignor of a thing in action and a deceased person, and is incompetent under the statute.

"(5) The defendants J. P. and C. V. Lodge paid a valuable consideration for the purchase of the lands in question, without knowledge or notice leading to knowledge of any trust in plaintiff, other than that disclosed by the agreement of December, 1879, and are, therefore, innocent purchasers of the land."

*Garver & Larimer,* for plaintiff in error.

*Wheeler & Switzer,* and *Waggener, Doster & Orr,* for defendants in error.

The opinion of the court was delivered by

SMITH, J.:   The petition failed to state that the defendants Merriam and the National Life-insurance Company, in case No. 14,290, had any knowledge of any fraudulent misrepresentations on the part of William E. Lodge or of any mistake of facts that induced the plaintiff to execute the agreement of 1879, and did allege in substance that these defendants paid a valuable consideration for the mortgages held by them. The ruling of the court in sustaining the demurrers of these defendants is affirmed.

The court erred in the seventh and eighth so-called findings of fact, which were really conclusions of law, and in the first and second conclusions of law.

The transaction detailed by the findings of fact was in no sense an assignment of dower. The plaintiff was entitled, as dower, to one-third of the use of the Illinois land during her lifetime, and commenced an action to have such dower assigned to her. The heirs

21—72 KAN.

to the fee had parted with their interest in the land and it was desired to unite with the fee title the entire use and right of possession. She had a right in action for such dower, but, instead of pursuing her action and having her portion assigned and taking the annual income, she compromised. She released and sold to the owner of the fee all her rights for a lump sum, as she would have sold a life lease or a mortgage upon the land. For this she received $6000, through her agent or trustee—not the use of $6000 during her life. Nor did the amount she was to receive depend upon whether she lived one year or fifty years.

No statute of the state of Illinois upon the subject was offered in evidence, and it is not to be presumed that it had any. By the common law, however, which was in force in that state, a dower right could not, at least before assignment, be sold or conveyed by deed. Nor could it be released to any one not the owner in whole or in part of the fee, or not so related to the fee that the release thereof would unite it with the fee. Such release could be purchased by the fee owner or by any one so related thereto, and could be made by the dowress for any consideration agreed upon by the persons interested. (*Hart v. Burch*, 130 Ill. 426, 22 N. E. 831, 6 L. R. A. 371; 10 A. & E. Encycl. of L. 146, *et seq.*) A release sold to one capable of purchasing was in no sense an assignment in bulk, and the purchase-price did not remain a part of the deceased husband's estate. Indeed, as in this case, the price frequently was paid by one who had no interest in such estate, and it became the absolute property of the dowress, as did the $6000 paid to plaintiff's agent in this case.

The writing given by plaintiff to William E. Lodge authorized him to sell and release this dower right, and the court found that he did sell it at a price authorized by her and to a person empowered by law to buy it. The court also found that William E. Lodge advised the plaintiff that she had only a life-interest

in the money to be obtained for such dower; that she was ignorant of the law; and that she believed and relied upon such advice in executing the writing of 1879.

There is no suggestion of bad faith or of illegitimate personal gain on the part of William E. Lodge in giving this advice, nor in the subsequent handling of the $6000 for more than twenty years. It is impossible to tell, and idle to speculate, how far this mistake of the plaintiff and her attorney influenced her action in making the agreement of 1879; whether she would otherwise have sold her right for $6000, or what disposition she would have made of the proceeds. She received more than one-third of the selling price of one-third of the land. For the use of the $6000 she has received $400 annually, free of all expenses, from 1879 to the commencement of this suit. It seems not to have been a bad settlement, and certainly has resulted in a fair income on the amount received. But the trial court erred in its conclusions of law, and on the facts found the plaintiff is entitled to relief. The facts being found, it is the duty of this court to direct what judgment is to be rendered when the case is remanded. What should that judgment equitably be as between all parties in interest? The plaintiff asks that the contract between herself and William E. Lodge, made in 1879, be set aside, and that she be adjudged the owner of the land bought, in part, with the money which came into Lodge's hands by reason of the contract, free of all encumbrances except sufficient of the mortgage lien to equal the purchase-price of the land in excess of the $6000 which was paid. Would this be equitable?

The situation, briefly stated, is this: The written statement of 1879 was executed by plaintiff and William E. Lodge not through any intended fraud but under a mutual mistake of law and fact. He sold and released her dower and received the proceeds, $6000, and used and invested the same so that she received the amount of the income stipulated ($400 annually)

for over twenty years. Much of the time it was invested in the land in question. He is directed by the writing that at her death the $6000 is to go to the sons of her deceased husband. Lodge got these sons to go upon the land in question and tried, apparently without any self-seeking, to put them in a position to pay the $400 annuity and the mortgages, and to become the absolute owners of the land on the death of plaintiff. They failed, as they failed to keep their father's estate in Illinois. The mortgage liens upon the land grew larger and larger. Lodge then, as "trustee," conveyed these lands to his own sons, the defendants in this suit, who assumed and agreed to pay the mortgages and also delivered to him their unsecured, non-negotiable promissory notes for $3000 each, bearing interest at seven per cent. annually, the principal to be paid at the death of the plaintiff to the Williams sons. This was a breach of the trust imposed in William E. Lodge and a violation of the agreement which authorized him to invest the $6000 "in improved lands or in mortgage loans on improved land." His sons also knew this was a breach of the trust and participated in it.

The interest was paid, and, about three years after this transfer, Lodge took from his sons a mortgage on the land in question, subject to the prior mortgage for $12,000, and a first mortgage on another 160 acres of land, to secure two other notes for $3000 each, given in lieu of the unsecured notes. A few years later William E. Lodge died, evidently unconscious, as was the plaintiff, that a mutual mistake had been made by them in 1879. His death in a sense ends the contract between him and the plaintiff.

Assuming that the mortgagees, who took liens on the land in question for moneys loaned, and Lodge's sons, who bought the land and assumed to pay the mortgage thereon, gave their notes for $6000 and for years paid interest thereon, and finally secured the payment of the $6000 and interest by mortgages on

this and other lands owned by them, knew the conditions and provisions of the writing of 1879 but knew nothing of any mistake or mistaken advice, should they suffer by reason of such mistake, for which they were in no wise responsible?  The answer must be in the negative.  Nor must they profit by the mistake.

As to the Williams sons and their heirs the provisions of the agreement were a gratuity.  They have paid no consideration therefor, but have derived benefits instead of being placed in a worse position by reason thereof.  The plaintiff by her petition has revoked such provisions, as at all times she had a right to do.

In the absence of proof or a finding that the $400 paid annually to the plaintiff was derived from the rent of the land—and the circumstances indicate the contrary—she is not entitled to interest on her money invested in the land and to the advance in the value of the land also.  Under certain circumstances she might take her choice either to reclaim her money with interest or to affirm the investment and take the land with its increased value.  She cannot equitably be entitled to both.  She has received the interest on her money up to the time she brought the suit and repudiated the agreement of 1879, and has made no offer to repay or relinquish the money so received.  Equity will now give her the principal and nothing more.

Case No. 14,447 is remanded, with instructions to the district court to render a decree that plaintiff is the equitable owner of the two $3000 notes executed by James P. Lodge and Charles V. Lodge in 1895 and of the mortgage given to secure the same, and that neither John F. Williams nor Edward M. Williams nor the heirs of either have any interest in the same; that judgment be rendered in favor of plaintiff against James P. Lodge and Charles V. Lodge for the amount of $6000, and interest thereon at the rate of six per cent. per annum from the commencement of the suit, the judgment to bear six per cent. interest till paid, and for costs; that the mortgage given to secure the

payment of the notes be foreclosed and plaintiff adjudged to have a lien, subject only to the mortgage for $12,000 and interest held by the National Life-insurance Company on the land covered by its mortgage, and a first lien upon the other tract of 160 acres; that said lands be sold and the proceeds applied as above indicated.

The costs in case No. 14,290 in this court will be taxed against the plaintiff in error, and in case No. 14,447 against James P. Lodge and Charles V. Lodge, defendants in error.

All the Justices concurring.