THE CHICAGO, KANSAS & NEBRASKA RAILWAY COMPANY v. ELIZA A. COOK, as *Administratrix* of the estate of *J. W. Cook, deceased.*

1. CONDEMNATION AWARD —*Appeal — Denial of Title — Burden of Proof.* A party who is not named in a condemnation award, or in any of the proceedings, appealed from the assessment of value and damages and filed a petition on the appeal, claiming that he is the owner of the strip of land appropriated. The railroad company denied his ownership. *Held*, That the burden is on such an appellant to prove title or exclusive possession for the period covered by the statute of limitations.

2. LEGAL TITLE *in Non-Resident — Statute of Limitations.* If the legal title to the real estate in controversy was vested in a non-resident who was absent from the state, and who was the immediate grantor of the appellant, the statute of limitations ceased to run during the absence from the state of such grantor. (*Morrell v. Ingle*, 23 Kas. 32, cited, and followed.)

3. NOTICE, *Not Given to Heirs — Void Sale.* If notice to the heirs and persons interested, of the time and place at which an application by an administrator to sell the real estate of the deceased will be heard, is not ordered by the probate court, and is not given to such persons, the sale is void. (*Mickel v. Hicks*, 19 Kas. 578, cited, and followed.)

*Error from Doniphan District Court.*

THE facts are stated in the opinion. Judgment for plaintiff *Cook*, at the April term, 1887. The defendant *Railway Company* brings the case to this court.

*S. L. Ryan*, and *Waggener, Martin & Orr*, for plaintiff in error.

*Frank Drenning*, and *W. D. Webb*, for defendant in error.

Opinion by SIMPSON, C.: On the 4th day of August, 1886, the plaintiff in error, by proceedings duly had, appropriated to its use as a right-of-way, " so much of out-lot No. twenty-four, in the city of Wathena, as lies within fifty feet on each side of the center line of said railway as now located." A stream called Peter's creek runs through this out-lot, and on the creek there is a small mill for making meal and feed, run

by a Leffel turbine wheel. The mill is a frame building about fifty-six feet long and twenty feet wide, and the machinery consists of buhrs, bolt, sheller, and elevator. A dam thirty-six feet long, constructed of timber, is on the lot and near to the mill. The land appropriated consists of a tract two hundred and thirty-six feet long by one hundred feet wide, off of the south end of said lot. This tract embraced the dam, and by the construction of the road the dam was destroyed by removing the same and changing the watercourse, and permanently destroying the water power, etc. The commissioners awarded five hundred dollars for the value of the right-of-way, and one thousand dollars for damages. J. W. Cook, who claimed to be the owner of the out-lot and the mill thereon, appealed to the district court of Doniphan county. At the trial in the district court the jury awarded Cook the sum of $4,000 as damages, with $194.45 as interest. The railroad company brings the case here, and alleges many errors that are urged to be sufficient for reversal; but we shall notice only one or two of the most important.

Ordinarily in actions of this character the question of title is not in issue, the only controverted question being the amount of compensation to be allowed. (Comp. Laws of 1885, p. 225, § 86.) In the case of *Gulf Rld. Co. v. Owen,* 8 Kas. 409, it is said:

"In the proceedings to procure condemnation, the corporation is the actor. It applies to the county commissioners to lay off the route as desired by the corporation, and to fix the value of the land which the corporation desires to appropriate, and assess the damages arising from the appropriation. The corporation is the moving cause, and the proceedings by the commissioners are all at its instance, and in its interest, and for its benefit. The object is to compel an unwilling landowner to part with his property for a just compensation. The corporation is to give written notice to all actual occupants of the land over which the route of the road is designated, where the land has not been purchased by or donated to the company; (§ 49, p. 203, Gen. Stat.) Before the board acts, notice is to be published in a newspaper; (§ 86, p. 213;) and it is also made the duty of the board to appraise and value and assess

the damages of each owner separately, when there appear to be different interests in the land; (§ 82, p. 212.) In all the proceedings up to the filing of the report, the steps are at the peril of the company. While, from the fact that the occupant is entitled to notice, and all others interested are notified by the publication required, it is apparent that those interested in the land may appear if they choose before the commissioners to protect their interests, they are under no obligations to do so, and nothing like a default can be taken against them. If ·in the discharge of their duties the commissioners err as to the ownership of the land, can it be supposed that the company, by following the error, and paying the wrong person, relieves itself from the obligation to pay the real owner of the land? Land-owners are not compelled to stand by with their title-papers in their hands. The company does not act under any different rules than those that govern any land-buyer. If he buys from the wrong person, he does so at his peril. It is the duty of the railroad company to ascertain who are the owners of the land it desires to appropriate, and it is at the risk of the company that it pays for the land. Such being the state of the case, and the obligation of the company, where no appeal is taken, what change is wrought by the appeal? The law is, that 'an appeal shall be had from the determination of the commissioners as to the value of the land so appropriated;' (§ 86, p. 213, Gen. Stat.) This is the main issue to be tried. It is probably true that by appropriate pleadings the company would be authorized to show that the appellant did not own the entire land, but that a separate interest is in another, or that some one else owned all the land. But unless such an issue is made by the pleadings, the position of the appellant as to the question of title is not different from what it was before the appeal was taken. The appellant is placed by the law, and by his own action in taking the appeal, in the position of saying: 'The appraisement of my land and the assessment of damages made by the commissioners are too small; I desire a retrial of that issue in the district court.' Is he bound to show a perfect legal title, such as would entitle him to recover in ejectment? We think not. He was not attempting to recover money of the company. He proved that he was in the occupancy of the land, claiming absolute title. This is *prima facie* evidence of title to land everywhere, as well as to personal property; (2 Greenl. Ev., § 555; *Ward's Heirs v. McIntosh*, 12 Ohio St. 231.) It is enough to sustain trespass and to resist a recovery in ejectment until a perfect

legal title is shown. That is, an actual possession under a claim of absolute title is *prima facie* evidence of seisin in fee simple, and sufficient till the contrary appears."

This embodies the law as stated in Mills on Eminent Domain. Now, turning to the record, we find that after Cook took the appeal he filed a petition in which he asserted ownership in the land. The railroad company filed an answer that contains a general denial. In addition to all this, it appears from the report of the commissioners that the ownership of the out-lot is not stated in the award. The record does not show in whose favor the deposit of the amount of the award was made in the county treasurer's office. Then again on the trial the defendant in error undertook to establish a complete legal title in himself. The whole case was conducted on the theory that the title was in issue, and the court instructed the jury that it was. There is nothing left for us to say on this state of facts, but that the title was in issue, and it devolved on Cook to establish it. Whether he proved title, is one of the most important questions to be determined. Counsel for defendant claim that Cook showed uninterrupted adverse possession for more than fifteen years — and this is enough. We say it is enough if the record shows such a possession.

1. Title; burden of proof on appellant.

On the trial this state of facts was developed as to the title to the out-lot: A patent from the United States to Milton E. Bryant as president of the incorporated town of Wathena, Doniphan county, Kansas, of the quarter-section of land in which the out-lot is situate, of date July 1, 1861; a deed from M. E. Bryant and wife to John H. Cox for out-lot No. twenty-four, of record May 22, 1867; (this deed is not made by Bryant in his official capacity as president of the incorporated town of Wathena, but is made as a personal conveyance;) a deed signed personally by Elizabeth Cox, but reciting in the deed and acknowledgment that she is the administratrix of John H. Cox, deceased, to Charles Wright; (this deed was executed on the 30th day of April, 1867;) a deed from J. W. Cook, administrator of the estate of Charles Wright, deceased,

to Jeremiah Johnson, of Fort Madison, state of Iowa, of date March 21, 1871; a deed from Jeremiah Johnson and wife to J. W. Cook, the defendant in error, of date January 14, 1882.

During the time the title was vested in Jeremiah Johnson he was a resident of the state of Iowa, and was absent from this state. Assuming as an undisputed fact that Cox was in the actual possession of the out-lot as early as 1863, the sale to Johnson was made in 1871, eight years after the actual possession by Cox. The deed from Johnson and wife to the defendant in error Cook was made on the 14th day of January, 1882, and these proceedings were instituted in June, 1886, a little more than four years after Cook acquired title. These two periods cover something over twelve and less than thirteen years.

Counsel for defendant in error, however, claim that the statute of limitations did not cease to run by reason of Johnson's absence from the state; "that the proper persons against whom an action to recover possession of the land should be brought are the persons who are in actual, open and notorious possession of it. An action against a man who is not in actual possession would be unavailing." The record shows that Cook has been in possession of the land ever since the 30th of April, 1870; at least, he was in actual possession as tenant and owner for more than fifteen years before these proceedings were instituted; that the Cox heirs could at any time during these fifteen years have brought their action against him. This proceeds upon the theory that § 21 of the code applies only to personal actions, and does not apply to actions concerning real property. Unfortunately for counsel for defendant in error, this court has decided the other way. In the case of *Morrell v. Ingle,* 23 Kas. 32, this court says:

2. Case, followed.

"There remains the other question, that arising on the statute of limitations. The deed was of record more than five years prior to the commencement of the action, but the defendant had not been present in the state for that length of time. Upon this counsel contends that the question of pres-

ence in or absence from the state has no effect upon the opera-
tion of the statute, so far as it is based upon the record of a
deed.    We cannot concur in this view.    The arrangement of
the sections of the statute forbids any such construction.    The
various sections prescribing periods of limitation in actions real
and personal, and including in the former cases in which the
record of a deed is material, are grouped together, and then
follow exceptions to those general clauses of limitation.    To
hold that those exceptions do not apply to all the clauses of
limitation to which they are in their nature applicable, is to
engraft upon the statute something not placed there by the
legislature.    One of those exceptions relates to the disability
of the plaintiff.    By what authority shall the courts say that
this applies to ordinary actions for the recovery of real estate,
but not to those brought by a judgment debtor against one
holding under a recorded sheriff's deed?    There is nothing
in the language or in the arrangement to indicate any intention
in the legislature to make the exception applicable in one case
and not in the other.    It certainly can apply in both cases.
It would be legislating, for us to distinguish.    Just so where
there is a disability on the part of the defendant.    If his
situation is such that he may not invoke the protection of the
statute in the one case, it is for the legislature alone to say that
when similarly situated he may invoke it in any other case.
That the defendant was absent from the state, his own testi-
mony shows; that in an ordinary action to recover the posses-
sion of real estate, such absence would prevent the running
of the statute, is conceded, and we see no reason to doubt its
efficacy in the present case.    We see no force in the argument
that because the cause of the action accrues from the taking
of possession, and not from the recording of the deed, there-
fore there is no exception to the running of the statute after
the record.    The truth is, the record of the deed shortens the
general statute, and the fact that that is shortened in certain
cases is no reason why there should be no exception in those
cases."

The case of *Beebe v. Doster*, 36 Kas. 666, is one in which
it was held that a limitation in the tax law must be construed
without reference to the general limitations contained in the
code.    The twenty-second instruction given by the trial court
is as follows:

"And in determining the question of fifteen years' posses-

sion by the plaintiff and his grantor, you will also deduct the time that the said Jeremiah Johnson was absent, if at all, from the state of Kansas, *and was not in possession of the land himself or by tenant.*"

The concluding words of this instruction are in direct conflict with the case of *Morrell v. Ingle*. The attorneys of the defendant below requested the court to instruct the jury that the statute of limitations would not run during the time that Jeremiah Johnson held the title and was a non-resident of and absent from the state. The court refused to so instruct, but held the law as given in the twenty-second instruction, as above recited. In the eleventh instruction given by the court, the jury are told:

"The deed of Elizabeth Cox to Charles Wright, of date April 30, 1867, can only be regarded as conveying to said Wright the one-half interest in the land therein described. The children of said John H. Cox, deceased, would then own the other one-half interest in said land."

This is in effect saying that the conveyance was the personal deed of Elizabeth Cox, and not her conveyance as administratrix of the estate of John H. Cox, deceased. This takes away all consideration of the five-years limitation, as provided in the second subdivision of §16 of the code, as applicable to the heirs of John H. Cox.

The deed from J. W. Cook, as administrator of the estate of Charles Wright to Jeremiah Johnson, is attacked, and it is claimed that there is no order of the probate court requiring notice to be given to the heirs of the time and place of hearing the application to sell real estate. The records of the probate court produced at the trial do not show any such order prescribing notice to the heirs and all persons interested, and do not show that any notice was ever given to the heirs either by publication or by personal service, and the records produced are said to be all the file papers, orders, and journal entries that can be found in the office of the probate court of Doniphan county. If there was no notice to the heirs of the time and place at which the application to sell the real estate

3. Case, followed.          to pay debts would be heard, the administrator's deed is probably void, even in a collateral attack, according to the case of *Mickel v. Hicks*, 19 Kas. 578. Deducting the absence from the state of Jeremiah Johnson, the grantee of Cook, the heirs of Wright were not barred under the second subdivision of § 16, at the time of the commencement of these proceedings; but there is some evidence tending to raise a presumption of their death. Putting the case in the most favorable light for the defendant in error, (and we only say this by way of argument,) title to an undivided half of the out-lot is only shown. In this view it was error to overrule the motion of the railroad company, that the award in no event exceed the sum of $2,000. For the error in instruction 22, as well as on the motion, we are compelled to reverse the case, and remand it for a new trial.

As another trial is to be anticipated, we might say in view of it, that as the statute makes it obligatory on the part of a railroad company that constructs its road across, along or upon any stream of water, watercourse, etc., to restore the stream, watercourse, etc., thus crossed, intersected, or touched, to such state as to not necessarily impair its usefulness, the trial court should allow the railroad company to show what was done in that direction, and also all offers or efforts to rebuild the dam, and to prove what it would cost to restore to the property the dam and the water power to the extent it was enjoyed and could be used before the construction of the road. It may also be said that it seems as if it is stretching a liberal rule beyond a reasonable limit, to allow witnesses who make no pretense to a knowledge of mills, or the milling business, to testify to the value of such property, and base their estimate of valuation upon the earning capacity of the machinery, or what they had seen it do.

It is recommended that the judgment of the district court be reversed, and the cause remanded, with instructions to grant a new trial.

By the Court: It is so ordered.

All the Justices concurring.