L. A. GOLDEN, *Appellee*, v. F. M. CLAUDEL, *Appellant*.
No. 16,967.

L. A. GOLDEN, *Appellee*, v. F. M. CLAUDEL, *Appellant*.
No. 17,123.

SYLLABUS BY THE COURT.

1. SALES—*Real Estate—Brokers' Authority to Execute Contracts.* The written authority of brokers to sell lands contained the following clause: "I . . . F. M. Claudel . . . do hereby authorize Mahin & Mahin . . . to bargain and sell in my name" the property described, stating the terms of sale. This conferred power on the agents to negotiate for the sale, and to conclude a contract in the owner's name binding him to make a conveyance, the language quoted not being limited or qualified in any way.

2. —————— *Valid Contract.* An agreement for the sale of land reciting the names of parties, the sale of the land described, and the consideration and terms of payment, contained the following clause:

"Party of the first part is to convey said land by warranty deed and furnish an abstract of title showing said land to be free and clear of all incumbrance and title perfect. Party of the second part is to take said lands subject to the lease now on the same for the year 1906."

It is held that the instrument created mutual obligations—of the vendor to convey and of the vendee to accept the conveyance and pay the consideration according to the terms stated.

3. —————— *Specific Performance—Not Barred by Laches of Vendee.* The vendee in the contract above referred to delayed the commencement of an action for three years and fifteen days after the repudiation of the agreement by the vendor. During about half of that time an action by the agents of the vendor to recover their commission was pending against him, wherein he interposed as a defense the want of authority of the agents to conclude a binding contract in his name, which is one of the defenses presented in this action. The vendor stated to third persons that if defeated in that action he would make the conveyance, and this statement was communicated to the vendee. The vendee's attorneys advised that the commencement of this suit should be delayed until the determination of the action referred to, which was determined adversely

to the vendor. Upon these facts and the attending circumstances the conclusion of the district court that specific performance was not barred by laches will not be reversed.

Appeals from Smith district court. Opinion filed October 7, 1911. Affirmed.

*John E. Hessin,* and *Uhl & Son,* for the appellant.

*Reed & Relihan,* and *Mahin & Mahin,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: The first appeal is from an order overruling a demurrer to a petition for specific performance of an agreement for the conveyance of real estate. The second appeal is from the final judgment for the plaintiff upon a demurrer to the evidence in the same action. Both appeals present the same questions.

The agreement relied upon by the appellee was signed on the part of the appellant by his agents in his name, but it is contended that their appointment did not confer authority to do so. The authority of the agents was in writing, and declares that "I . . . F. M. Claudel . . . do hereby authorize Mahin & Mahin . . . to bargain and sell in my name" the property in question, stating the terms of sale. It is argued that this instrument only authorized the agents to find a purchaser, and did not empower them to conclude a contract. Whether a mere authority, expressed only in the words "to sell" or other similar expressions, authorizes the execution of a contract by a real-estate broker, binding his principal to convey, is a question upon which decisions in other jurisdictions are in seeming disagreement (*Brown v. Gilpin,* 75 Kan. 773, 90 Pac. 267), but it was held in the case cited that the inquiry to be determined in each doubtful case is whether the owner has shown an intention that the agent should act merely as an ordinary broker, or that he should go further and effect a binding contract of sale. In this case the instrument appoint-

ing the agents confers more than a mere authority to sell; the language used is "to bargain and sell in my name." "To bargain" implies negotiation over the terms of an agreement, and "to sell in the principal's name" implies the conclusion, in his name, of the agreement so to be negotiated. No other intention is discoverable in the language quoted. This is the natural import of the language and is believed to have been the intention of the parties. The same conclusion was reached in *Peterson v. O'Connor,* 106 Minn. 470, 119 N. W. 243, in construing the words "bargain and sell" in the written authorization given to a real-estate broker, the words "in my name" not being in that instrument.

It is next insisted that the contract executed in pursuance of the authority so given to the agents is not enforceable against the vendor because it contains no obligation on the part of the vendee, and that there is lack of mutuality of obligation and remedy. The contract, after reciting the names of the parties, description of the land, the sale price, and terms of payment, reads:

"Party of the first part is to convey said land by warranty deed and furnish an abstract of title showing said land to be free and clear of all incumbrance and title perfect. Party of the second part is to take said lands subject to the lease now on the same for the year 1906."

The covenant to convey and the covenant to take create mutual obligations. The covenant that the vendee will take the land implies that he will take it upon the terms upon which the vendor agrees to sell it, but subject to the lease as stated in the concluding words. This qualifying phrase does not abrogate or limit the obligation to take and pay for the land according to the terms stated, upon which the vendor agreed to convey it, but imposes an additional condition. The appellee argues that if it should be held that the instrument contains no covenant on the part of the vendee, still, having accepted its terms, tendered performance on his part,

and sued to enforce performance by the other party, the lack of mutuality is not available as a defense. It was said in *Peckham v. Lane,* 81 Kan. 489, 106 Pac. 464, in deciding an action for specific performance:

"A further argument is made that the contract is wanting in mutuality, but as the plaintiff alleges full performance on his part this defense is not open to the defendants." (p. 493.)

The question is also considered in *Water-supply Co. v. Root,* 56 Kan. 187, 42 Pac. 715; *Burnell v. Bradbury,* 67 Kan. 762, 74 Pac. 279; *Zelleken v. Lynch,* 80 Kan. 746, 104 Pac. 563; *Painter v. Fletcher,* 81 Kan. 195, 105 Pac. 500, and *Wiley v. Hellen,* 83 Kan. 544, 112 Pac. 158. The appellant insists that these and other decisions of this court to the same effect should be distinguished for various reasons, among others that this contract was signed by both parties and that there was no such performance by the vendee that an appeal to conscience can be made as in the Zelleken case. It is unnecessary to review these decisions and determine their application here, for, as already stated, this contract expresses sufficient mutuality of obligation to bind both parties.

It appears from the special findings that at the time the contract of sale was signed the vendee delivered his check for the advance payment of $3000 to the vendor's agents, who thereupon presented the contract and check to the vendor and told him of the sale. Being then informed that Golden was the purchaser appellant declared that Golden should not have the land, but that if the sale had been made to other parties they might have it. He made no objection to the check, and no other objection to the contract, but refused to go further with the transaction only because he objected to the purchaser, and upon the offer of his agents to produce the money, replied in effect that this would make no difference, that Golden should not have the land. The check was good, the appellee having more than the

amount on deposit subject to its payment. On the 15th day of February, 1906, the appellee notified the appellant that he would be ready on March 1, the date for final payment specified in the contract, to close up the deal, and would either take the money to Smith Center, where the contract was made, or to the appellant's place. The appellant replied that he would not make the deed, and refused to go further with the transaction. On March 1, 1906, the appellee produced a sufficient sum of money, in gold and United States treasury notes, to the appellant's agents, and said that he desired to make a formal tender of the amount due on the contract. The agents disclaimed any authority to receive it, but stated that they would inform their principal of the offer, which they did by telephone, he being at his home about twenty miles away. The appellant answered that he would not receive the money or make the deed. The agents then proposed to take the money to him but he said he would not accept it. The money was then counted out in the presence of the agents, and offered to them but they refused to take it. In view of these facts the objection that the tender of performance was insufficient can not be sustained. It is unnecessary to discuss the authority of the agents to receive the money. The principal himself having declared that he would not accept it, a tender was unnecessary. (*Chinn v. Bretches,* 42 Kan. 316, 22 Pac. 426; *Caley v. Mills,* 79 Kan. 418, 100 Pac. 69; *Niquette v. Green,* 81 Kan. 569, 106 Pac. 270.)

This action was commenced three years and fifteen days after the appellant refused to perform the contract, and the appellant insists that as the value of the land had greatly increased meanwhile, the contract should not be enforced because of this delay. We find no evidence of any increase in value in the abstract although it is stated in the brief of appellant that such evidence was given. It is argued, however, that the court should take judicial notice of the general advance

in land values, and that to permit a recovery is to allow a speculation upon the real-estate market—conduct condemned by the authorities. On the other hand, it is insisted that mere delay, short of the statutory period of limitation, when the adverse party is not shown to have been prejudiced thereby, will not preclude the action. The subject was referred to in *Niquette v. Green,* supra. The doctrine contended for is an equitable one, and all the circumstances of each particular case must be examined to determine whether in good conscience a party in default should be released from his agreement by the delay of the other party in enforcing his right. It was alleged and shown that soon after the repudiation of this agreement by the appellant a suit was commenced against him by his agents to recover a commission upon this sale. That action was defended upon the ground that the agents had no authority to conclude and sign the contract—one of the grounds relied upon to defeat this action—and that the appellant had said that if it should be determined in that action that the agents had such authority he would make the conveyance. This declaration coming to the knowledge of the appellee is assigned as one reason for the delay. It was further shown that appellee's attorneys—the same persons who had signed the contract of sale as agents for appellant (their agency having ceased)—advised that the commencement of this suit be delayed until the action referred to should be determined. That action was determined in favor of the agents. While there was considerable delay after the judgment—in fact about seventeen months—still, the pendency of that action, and the advice of attorneys, in connection with all the circumstances, appear to afford grounds for holding that the right to specific performance was not absolutely barred merely because of this delay. At least the situation presented upon the evidence affords no ground for holding that there was an abuse of judicial discretion in finding that the ap-

Golden v. Claudel.

pellee should not be defeated because of his failure to sue earlier. A review of the multitude of cases, often apparently conflicting—in other jurisdictions where this subject of laches has been considered would not clarify the situation. As stated in *Hammond v. Hopkins*, 143 U. S. 224, 250, quoted with approval in *Rogers v. Van Nortwick and others*, 87 Wis. 414, 58 N. W. 757:

"Each case must necessarily be governed by its own circumstances, since, though the lapse of a few years may be sufficient to defeat the action in one case, a longer period may be held requisite in another, dependent upon the situation of the parties, the extent of their knowledge or means of information, great changes in values, the want of probable grounds for the imputation of intentional fraud, the destruction of specific testimony, the absence of any reasonable impediment or·hindrance to the assertion of the alleged rights, and the like." (p. 428.)

A comprehensive statement is found in 36 Cyc. 730*b*, as follows:

"The broad principle, as applied to other equitable remedies, is generally recognized, that a delay which neither evidences an abandonment of right, nor operates to the prejudice of the other party, is not a defense. A number of specific performance cases have expressly announced and applied the same rule; and they are supported by the statements and reasoning of a much larger number, in which denial of relief is based upon the injury resulting from the delay."

No effort to declare with exactness the conditions upon which this defense will be sustained can be entirely successful, for the endless variety of circumstances must always influence the discretion of the court in determining the equity of a given case. The element of increase or decrease in values is a factor, especially where the property involved is subject to rapid and frequent changes in value, as in the case of stocks, mining property and the like. (*Rogers v. Van Nortwick and others*, 87 Wis. 414, 58 N. W. 757; *Johnston v. Standard Mining Co.*, 148 U. S. 360, 370.)

A general increase in farm values, incident to settlement, improvement and development of the region, or a succession of good crops, where there has been no outlay for improvements, while proper for consideration, and to be given due weight, may not always be so important an element. A party, however, will not be allowed by willful or unreasonable delay to speculate upon an advancing market, intending to insist upon the contract if there is an advance and to abandon it if there is a decline. In other words, equity requires good faith.

It was said in *Harris v. Defenbaugh*, 82 Kan. 765, 109 Pac. 681:

"Where, by reason of acquiescence and long lapse of time, there is a possible loss of testimony or increased difficulty of defense, the doctrine may be applied in the discretion of the court; but laches does not consist in the mere lapse of time." (p. 770.)

Taking into consideration the various elements already referred to and all the circumstances affecting the equities of the case, specific performance is decreed or denied in the exercise of sound judicial discretion.

"Whether specific performance of the terms of a mutual contract shall be decreed, under all the facts and circumstances which go to make up the equities between the parties, rests largely in the sound discretion of the court." (*Reid v. Mix*, 63 Kan. 745, syl. ¶ 1, 66 Pac. 1021.)

The abstract shows a discrepancy in the description of one of the tracts between the instrument of agency and the contract of sale, and it is argued that the decree is erroneous because it covered land not described in such instrument of agency. An examination of the petition on which the case was tried reveals the fact that the mistake is in the abstract of this instrument attached as an exhibit to this petition.

The judgments appealed from are affirmed.