ETTA H. OSINCUP, *Appellant*, v. JENNIE HENTHORN et al., *Appellees.*

No. 17,974.

SYLLABUS BY THE COURT.

1. CONVEYANCE—*Mistake of Rights under Laws of Another State—Equitable Relief.* The mistake of the wife and mother of a decedent in regard to the law of descents and distributions of a state other than that of their residence, which led to the apportionment and transfer of land owned by the decedent at the time of his death to the mother when, under the statute, the widow was entitled to all of it, is a mistake of fact against which equity will relieve unless some principle of equity bars the granting of such relief.

2. ——— *Laches—Delay in Asserting Rights.* The general rule is that equity will not interpose to relieve from a mistake where there is inexcusable delay and negligence in asserting a right or where the granting of the relief would operate inequitably, but laches is an equitable defense and will not bar a recovery from mere lapse of time nor where there is a reasonable excuse for non-action of a party in making inquiry as to his rights or in asserting them.

3. ——— *Whether Party Was Guilty of Laches Was for the Jury.* In view of the testimony herein as to the delay of appellant in making inquiry or in asserting her right to land owned by her but which was conveyed to the mother of decedent by mistake, the question whether she was guilty of laches was one of fact, and the ruling of the trial court sustaining a demurrer to her evidence was error.

Appeal from Trego district court. Opinion filed
March 8, 1913. Reversed.

*Herman Long*, of Wa Keeney, for the appellant.
*W. E. Saum*, of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Manfred E. Hull and his wife,
Etta H. Hull, now Etta H. Osincup, the appellant, were
in 1894 residents of the state of Iowa, and with them
lived his mother, Julia A. George. Manfred E. Hull
was possessed of certain property in the state of Iowa
and also of certain land in the state of Kansas. On
October 24, 1894, Hull died intestate, leaving surviving
him his wife and mother, but no children. In order
to settle up the estate and acting upon the advice of an
attorney, who, as it is alleged, informed appellant
and Julia A. George that they were each entitled to
one-half of the Kansas land, appellant and Julia A.
George entered into a contract which recited that "in
consideration of the love and affection existing be-
tween the parties" the estate, including the Kansas
land, should be equally divided between them after
the payment of debts and funeral expenses. To carry
out this agreement appellant made a quitclaim deed
for the Kansas land to Julia A. George "in considera-
tion of one dollar and other valuable considerations,"
and later received from Julia A. George a quitclaim
deed for an undivided one-half interest in the land for
the same consideration. In each of the deeds it was
recited that Julia A. George was the mother and only
heir of Manfred E. Hull. In 1910 Julia A. George,
while a resident of Illinois, died, leaving a will naming
the appellees as devisees. At this time appellant was
a resident of California, and after Julia A. George's
death appellant alleges that by consulting an attorney
regarding her interest, if any, in the estate, she for the
first time found herself to have been entitled to the whole

of the Kansas land owned by Manfred E. Hull, and she
thereupon brought this action to set aside the agree-
ment entered into with Julia A. George and the deed
conveying the land. She gave testimony that she had
not resided in the state of Kansas and had, therefore,
had no opportunity to become familiar with Kansas
laws. In their answer to appellant's petition appellees
deny that at the time of the making of the contract
and deed appellant was laboring under any mistake as
to the legal rights of the parties, and assert that the
instruments were voluntarily given and entered into.
As a further defense appellees set up that appellant
was guilty of laches in not familiarizing herself earlier
as to her legal rights under the Kansas laws. On a
trial of the cause the appellant produced the evidence
above outlined, but a demurrer to her evidence was
sustained and the case dismissed.

Accepting as true all of the testimony which tends
to support the allegations of the appellant in her peti-
tion, and drawing every fair inference from it favor-
able to her, as must be done upon a demurrer to evi-
dence, did she present a case for equitable relief? She
alleged that upon the death of her husband she became
the absolute owner of the Kansas land, but that she
and Julia A. George were advised by an attorney and
led into the mistaken belief that the law of Kansas was
the same as the law of Iowa, where they resided, giving
the mother of decedent one-half of the land in Kansas
as well as in Iowa, and that transfers were made by
each to the other of a one-half interest in the land with-
out any consideration, and that neither of them resided
in Kansas and neither discovered the mistake before
the death of the mother in 1910, and that after her
death and upon inquiry appellant discovered the mis-
take, and that she promptly came to a court of equity
in order to correct the mistake and obtain relief.

The testimony shows plainly enough that a mistake
was made, and also that it was a mutual mistake. The

oral evidence of appellant is supported by the recitals in the deeds that were executed. In the deed executed by appellant it is recited:

"The grantee is the mother and only heir at law of said Manfred E. Hull, deceased, who died intestate without living issue."

In the deed from Julia A. George to appellant there is a recital as follows:

"The said Julia A. George is the mother and sole heir at law of Manfred E. Hull, and the grantee is the widow of said Manfred E. Hull, deceased, who died intestate without living issue."

The mistake was not an unnatural one. The deceased owned land in Iowa, where he lived with his wife and mother, and under the law of that state one-half of the real estate which he had owned there descended to the mother and the remainder to the widow. They believed.that the law of descents and distributions was the same in Kansas as in Iowa, and of this they were reassured by the advice of a lawyer of that state.

It is contended that if a mistake was made it was one against which equity will not relieve. Passing the question as to whether equity ever gives relief for a mistake of a person as to his legal rights or as to the law, it must be held that the mistake claimed by appellant was one of fact. It was not a mistake as to the legal effect of the deeds executed, but it was a mistake as to the law of descents and distributions of a state other than the one in which the parties resided, and of the rights of the parties under that statute. It has been decided that a mistake as to the law of another state is one of fact against which relief may be had in the absence of countervailing equities. On this question it has been said:

"The general rule that a mistake of law, pure and simple, is not adequate ground for relief rests upon the fundamental assumption that persons of sound and mature mind are presumed to know the law, but this

assumption does not apply to the laws of another state. (2 Pom. Eq. Jur., 3d ed., § 842.) Ignorance of these laws is deemed to be ignorance of fact." (*Bolinger v. Beacham*, 81 Kan. 746, 750, 106 Pac. 1094.)

Other cases of like import are: *Railroad Co. v. Johnson*, 61 Kan. 417, 59 Pac. 1063; *Williams v. Merriam*, 72 Kan. 312, 83 Pac. 976; *Mystic Legion v. Brewer*, 75 Kan. 729, 90 Pac. 247; *Morgan v. Bell*, 3 Wash. 554, 28 Pac. 925, 16 L. R. A. 614.

Through this mistake of fact, based on erroneous advice from one on whom she would naturally rely, appellant conveyed property to which she had a clear and complete title to one who gave no consideration for it and who had no interest in or right to it. The preliminary contract between them referred to the consideration of love and affection, and in the deeds the consideration recited was "one dollar and other valuable considerations," an expression used to indicate a nominal consideration, and is ordinarily employed in cases where nothing is actually paid. It is not easy to infer that appellant intended to donate and convey land of which she had an absolute title to Mrs. George, but her testimony, which is uncontradicted, is that there was no consideration in fact paid, and no intention to make a gift to the grantee, but that through the erroneous advice and the mistake as to their rights of inheritance under the statute they apportioned the land between them in equal shares and deeds were accordingly executed.

The next contention is that equity will not grant relief from the mistake in question because of the laches, or negligence of appellant in making inquiry and in asking for redress. The general rule is that equity will not interpose to relieve from mistake where there is inexcusable negligence or where the granting of the relief asked would operate inequitably and do an injustice. On the other side, it is said that there were good reasons for the delay, that no circumstances arose

to cause distrust of the advice given to appellant until about the time the action was brought. It appears that neither of the parties ever lived in Kansas. For about six years after the transfers were made appellant and Julia A. George lived together in Iowa. After that time Mrs. George removed to Illinois, while appellant went to California. When Julia A. George died appellant consulted an attorney in California as to whether she had an interest in the estate of Julia A. George, when she was informed for the first time that under the Kansas statute she was entitled to all of the Kansas land which her husband owned at the time of his death. The advice given the parties and the circumstances under which they acted, the exchange of deeds which would naturally end inquiry and be accepted as the final division and settlement of their rights in the lands of the deceased, the absence of appellant from Kansas, and the fact that no circumstance arose to challenge the correctness of the advice or the legality of the apportionment of the land, are the excuses assigned for the long delay in discovering the mistake and in asking for relief, and in view of these facts it can hardly be said that the inaction of appellant was inexcusable. Laches is an equitable defense and ought not to be applied in a way that would do injustice or defeat the real owner of land from recovering it. Although about sixteen years elapsed between the execution of the deeds and the bringing of this action, a fact which made it incumbent upon appellant to show some sufficient excuse for the delay, it is well settled that the lapse of such a time will not necessarily defeat the granting of equitable relief. If a party has no knowledge of his rights he can hardly be charged with negligence in failing to assert them; neither can he be regarded as having abandoned such rights as he may have. In *Galliher v. Cadwell*, 145

U. S. 368, 12 Supr. Ct. Rep. 873, 36 L. Ed. 738, the court said:

"They (cases on laches) proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him to now assert them." (p. 372.)

If, as the testimony tends to show, appellant acted as soon as she learned of the mistake and of the fact that her land was held by another, how can it be said that there was any abandonment of her rights, or laches in asserting them? It would be inequitable to impute negligence to one who was ignorant of her rights. It has been said:

"There can be no laches in failing to assert rights of which a party is wholly ignorant, and whose existence he had no reason to apprehend." (*Halstead v. Grinnan,* 152 U. S. 412, 417, 14 Supr. Ct. Rep. 641, 38 L. Ed. 495.)

In *Nicholson v. Nicholson,* 83 Kan. 223, 109 Pac. 1086, a case similar to the one under consideration, it was said:

"It is conceded that a mistake as to the law of another state is a mistake of fact, but it is urged that the plaintiff's petition discloses laches; that she has been negligent in not reading up on the law of Ohio. A woman eighty-four years of age, who has resided in Kansas for many years and is ignorant of the laws of another state, and who relies upon the statements of her adopted son that such laws are thus and so, can not, as a matter of law, be held guilty of laches in failing to discover the truth with respect thereto." (p. 223.)

No one would have questioned the right of appellant to relief if it had been asked for within a short time after the mistake was made, and it should not be denied

now unless there are other considerations than the mere lapse of time. If the rights of creditors were involved, or innocent purchasers affected, or if the granting of relief would operate unjustly as against any one, other considerations would arise. There has been no change of conditions connected with the delay, so far as the testimony of appellant goes, which would necessarily make it inequitable to grant relief to her. The appellees are claiming under Mrs. George and have no better rights to the property than she had. The death of one of the parties, it is true, is a consideration for the court, as it may affect the production of evidence as to the circumstances of the transfer, but this of itself is not sufficient to prevent the granting of relief· in this case. On all of the testimony of appellant it can not be held, as a matter of law, that she has been guilty of laches either in failing to discover the mistake or in failing to act with promptness after making the discovery. It is not determined, of course, that appellant is entitled to a judgment for the recovery of the property, as the testimony of appellees has not yet been produced, but only that the testimony of appellant appears to make out a *prima facie* case for relief, so that it became a question of fact whether there were laches or any circumstances which would make the granting of the relief asked inequitable or unjust. There was error in sustaining the demurrer to the evidence of appellant, and for that reason the judgment will be reversed.