### No. 19,153.

E. C. WATTS, *Appellee*, v. EMMA MYERS and ALONZO LAFAYETTE BURGOON, *Appellants*.

#### SYLLABUS BY THE COURT.

1. EJECTMENT—*Deed Procured by Fraud and Duress of Husband—Certain Evidence of Wife Showing Duress Was Competent.* On the trial of an action by a widow to recover possession of land which she had been induced to convey by the fraud and duress of her former husband she was asked whether or not she had heard that her husband had made threats in case she did not sign the deed, and answered in the affirmative. She was also permitted to testify in answer to a question why she feared there would be more trouble. "Well, I had it from the surrounding circumstances, what had happened." *Held,* that such testimony was not incompetent by reason of section 320 of the civil code as amended by chapter 229 of the Laws of 1911, concerning transactions or communications had with deceased persons.

2. SAME—*Statements of Deceased Husband Claiming Ownership of Land Competent Evidence.* The testimony showed and the court found that the former husband in conspiracy with his brother had by fraud and duress procured from the wife a deed conveying the land to the brother but that the husband continued to be the real owner of the land up to the time of his death, and that the defendants were voluntary grantees without consideration, the deed to them being made for the purpose of defrauding the plaintiff. *Held,* that it was proper to receive in evidence proof of statements made by the deceased husband after the execution of the deed by the wife that he still owned the land and had deeded it to his brother to defraud his wife.

3. SAME—*Delay in Bringing Suit no Estoppel.* Mere delay in bringing suit does not estop the plaintiff from its maintenance when the property has remained substantially the same and the rights of no innocent third party have intervened.

4. SAME—*Limitation of Action—Not Available to Nonresident.* The defendants never having been within the state of Kansas could not avail themselves of the fifteen years' statute of limitation as a basis for claiming adverse possession.

Appeal from Kingman district court; PRESTON B. GILLETT, judge. Opinion filed January 9, 1915. Affirmed.

*Charles C. Calkin,* of Kingman, and *S. W. Mills,* of Kirksville, Mo., for the appellants.

*George L. Hay, L. F. Walter,* both of Kingman, and *Charles M. Williams,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

WEST, J.: This is an action in ejectment involving the title to a quarter section of land in Kingman county. The court made findings of fact and conclusions of law, resulting in a judgment for the plaintiff from which the defendants appeal and complain of certain rulings touching the introduction of evidence and certain findings made by the court and its refusal to make others requested by the defendants, and of the general result of the trial. From the findings it appears that in 1884 the plaintiff, then a widow having several children by a former marriage, was married to Lafayette Watts, and the following year with him took up her residence upon the land in question. Two of the plaintiff's sons and a daughter lived with their mother and stepfather as members of the family and for a time the relations appear to have been pleasant. After the husband's return from the funeral of his mother he suggested a conveyance of the land to his brother, Oliver Watts, who lived in Missouri, and upon the plaintiff's objection he became sullen and brutally assaulted one of her boys without apparent provocation, saying that if she would sign the deed to his brother they would get along

all right.  Shortly after this another attack, still more brutal and cowardly, was made on the same boy, followed by a repetition of the same suggestion to his mother concerning a deed.  This was followed by threats of death to the boy and by the peculiar handling of a large pruning knife, and at another time an axe, all of which resulted in the plaintiff's joining in the requested deed, being moved thereunto by fear of further violence to her boy and bodily harm to her other children, the deed not being made, however, until the plaintiff had suffered a serious nervous collapse, followed by ten days' sickness.  The land was the homestead of the plaintiff and Lafayette Watts, and the court found that the latter, with his brother Oliver, fraudulently conspired to defraud the plaintiff out of her interest and to get the title in the name of the brother and that the conduct referred to was in furtherance of this conspiracy; that shortly after the marriage the plaintiff furnished her husband $400 in money with which to build a house upon the land and to make other improvements, being money inherited from her father's estate; that when the deed was made (1886) the land was worth $2400, and at the time of the trial, June 26, 1913, $7500; that although she lived within a distance of from twenty to seventy miles of this land, the plaintiff did not until the bringing of this suit, August 12, 1912, take any steps to set aside the deed.  In the spring of 1887 Lafayette Watts left the plaintiff, taking some of the household goods, and never returned to live with her, merely visiting her two or three times.  Various other findings were made that need not be discussed.  It was, however, expressly found that the deed passed only the naked legal title and that the land continued to be the property of Lafayette Watts until his death, April 23, 1910; that Oliver Watts was appointed administrator and did not make the slightest exertion to find the plaintiff's address or whereabouts, and procured final settlement, which was set aside on her motion, without recognizing her as one of the heirs and without giving her any notice of his appointment, which the

court found was fraudulent misconduct on his part amounting to a continuance and carrying out of the original conspiracy, and that the deed by Oliver Watts to the defendants was voluntary and without consideration and made for the purpose of defrauding the plaintiff. Also that the plaintiff first learned of Lafayette Watts' death in July, 1912, and there was no un-reasonable delay on her part in bringing this suit; that Lafayette Watts left no bodily heirs, but left the plaintiff as his widow. As a conclusion of law the court found that the execution of the deed was procured by fraud, coercion and duress, and did not carry with it the joint consent of the husband and wife, and that the plaintiff as the sole heir of Lafayette Watts and hence the sole fee owner of the land was entitled to have her title quieted and to recover for rents and profits.

Much complaint is made because the plaintiff was permitted to answer whether or not she had heard that her husband made threats in case she did not sign the deed and that she "had it from the surrounding circumstances, what happened," and it is asserted that this violated the statutory bar against testimony concerning transactions or communications had with deceased persons. But the fact that she had heard that he had made threats would imply that she had heard it from others rather than from him, and as to what had happened she was not permitted to state, hence the testimony was properly admitted. (*Murphy v. Hindman,* 58 Kan. 184, 48 Pac. 850; *Gaston v. Gaston,* 83 Kan. 215, 109 Pac. 777; *Bryan v. Palmer,* 83 Kan. 298, 111 Pac. 443; *Fish v. Poorman,* 85 Kan. 237, syl. ¶ 7, 243, 116 Pac. 898; *Coblentz v. Putifer,* 87 Kan. 719, syl. ¶ 2, 725, 125 Pac. 30; *Dennis v. Perkins,* 88 Kan. 428, 436, 129 Pac. 165.)

It is urged that it was highly improper to receive testimony of statements made by Lafayette Watts after the deed was made to the effect that he still owned the land which he had deeded to his brother to defraud his wife. No reason is apparent, however, why one who has carried out such a conspiracy should not,

as against the person defrauded, be bound by his subsequent acknowledgment thereof. It is not a case of a grantor destroying the effect of a deed as between himself and his grantee; and especially in view of the fact that he treated this land as his own and received rent for it and exercised dominion over it, it was proper for his widow and heir to show his statements and declarations touching his relation to the land. (*Martin v. Shumway,* 89 Kan. 892, 132 Pac. 993.)

The defendants also urge that the findings of fact should have been for them and not for the plaintiff, which evidently means that in their opinion the fraud and duress were not sufficiently proved, but it is impossible to read the evidence without finding ample support for the charge of duress of a peculiarly cruel and effective kind.

Complaint is made that the court did not at the defendants' request vacate the thirty-six findings of fact made and return fifty-six others submitted by them, but such examination as is consistent with the brevity of human life has resulted in finding no error in this respect.

It is urged that because the plaintiff did not move to set aside the deed or take any other steps to protect her rights all the many years which elapsed between its execution and the death of her husband she must be held to have jointly consented and to have estopped herself by her laches. The trial court found, however, that the land remained as it was except slight improvements; that the rights of no innocent third party had intervened; that in accordance with the repeated statements made by the deceased himself he continued to be the owner of the land, which as a matter of course the sole heir would inherit upon his death. (*Clark v. Coolidge,* 8 Kan. 189; *Golden v. Claudel,* 85 Kan. 465, 471, 118 Pac. 77; *Rambo v. Bank,* 88 Kan. 257, 128 Pac. 182; *Osincup v. Henthorn,* 89 Kan. 58, 130 Pac. 652; *City of Hutchinson v. Hutchinson,* 92 Kan. 518, 141 Pac. 589; 36 Cyc. 730.)

As to adverse possession, neither Oliver Watts nor

either of the defendants had ever been in Kansas prior to the trial, hence the statute of limitation does not avail. (Civ. Code, § 20; *Ard v. Wilson,* 8 Kan. App. 471, 54 Pac. 511; affirmed, 60 Kan. 857, 56 Pac. 80; *C. K. & N. Rly. Co. v. Cook,* 43 Kan. 83, 22 Pac. 988.) Finding no material error the judgment is affirmed.