No. 28,671.

THE NATIONAL BANK OF NESS CITY, *Appellee*, v. E. J. WALTERS
et al., *Appellants*.

(281 Pac. 868.)

Opinion filed
November 9, 1929.

*F. Dumont Smith, Eustace Smith* and *Arthur T. Symns,* all of Hutchinson,
for the appellants.

*A. S. Foulkes,* of Topeka, *William Osmond, Elrick C. Cole* and *T. B. Kelley,*
all of Great Bend, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a judgment creditor to subject
to payment of the judgment lands which the debtor fraudulently
conveyed to his wife. The defense was that the action was barred
by the statute of limitations and by laches. Plaintiff recovered, and
defendants appeal.

On January 2, 1923, E. J. Walters executed a warranty deed con-
veying to his wife five quarter sections of land in Ness county. The
consideration stated in the deed was $500, and the value of the land
was greatly in excess of that sum. The deed was filed for record on
January 27, 1923, and at that time Walters was indebted to the
National Bank of Ness City as one of several makers of a note for
$30,000 payable to the bank. The action to set aside the conveyance
was commenced on April 20, 1927. The statute reads as follows:

"Civil actions, other than for the recovery of real property, can only be
brought within the following periods, after the cause of action shall have ac-
crued, and not afterwards: . . . Within two years . . . an action for
relief on the ground of fraud—the cause of action in such case shall not be
deemed to have accrued until the discovery of the fraud." (R. S. 60-306.)

It may be assumed without deciding the question that under the
circumstances the record of the conveyance afforded constructive
notice of the fraud as well as of execution and contents of the deed.
Besides that the bank acquired knowledge of the fraud on Novem-

ber 25, 1924. Therefore the bank's petition in the nature of a creditor's bill was not filed until more than two years elapsed after discovery of the fraud.

While the statute deals with maturity of cause of action for relief on the ground of fraud, factors other than discovery of the fraud may be necessary to accrual of cause of action. Discovery of the fraud does not bring about accrual of a simple contract creditor's cause of action to set aside his debtor's fraudulent conveyance. The creditor's claim must mature; he must reduce it to judgment; he must issue execution, unless the debtor be insolvent; and the execution must be returned unsatisfied. Not until those conditions have been met does cause of action to set aside the conveyance accrue.

Walters was indebted to the bank on a promissory note which matured on October 31, 1924. Action to recover on the note was commenced January 26, 1926, and judgment was rendered March 8, 1926. Execution was returned *nulla bona* April 20, 1926. Proceedings in aid of execution were commenced on June 10, 1926, which remained pending until March 24, 1927. As indicated, action to set aside the fraudulent conveyance was commenced on April 20, 1927, and under the facts thus far disclosed the action was not barred by the two-year statute of limitation.

A creditor having knowledge of his debtor's fraudulent conveyance must not unduly delay taking the steps necessary to qualify him to set the conveyance aside and, as indicated, the bank was charged with laches in reducing its claim to judgment.

In December, 1921, Walters, with other makers, executed a note to the bank for $30,000, due December 13, 1923. In March, 1922, Walters commenced an action to replevin the note on the ground it was a void instrument. Pleadings were filed, issues were joined, and the replevin action remained pending until March 4, 1924, when it was dismissed without trial and without prejudice. Action to recover on the note was commenced on July 14, 1924. The first term of court to be held after dismissal of the replevin action commenced on the second Monday of October, and nothing could be gained or lost by suing on the note earlier than July. The suit on the $30,000 note was dismissed on September 22, 1924, by special agreement pursuant to which the makers were released from their joint and several obligations, and each one gave his individual note for a fixed sum which measured his obligation to the bank. Walters gave his note for $3,000, due October 31, 1924.

New credit was not extended to Walters on the basis of his existing financial condition. The consideration for the $3,000 note was settlement of his indebtedness on the $30,000 note. There had been no delay in any legal or equitable sense, on the bank's part, in pressing its claim. The extension of time in which to pay was inconsequential. Walters' liability to the bank was greatly reduced, and the arrangement pursuant to which the $3,000 note was given was distinctly not detrimental to the fraudulent grantee.

The bank brought suit to recover on the $3,000 note on January 26, 1926, approximately fifteen months after the note matured. Meanwhile the bank was not inactive. When the note matured a notice was sent to Walters. He did not respond, and about thirty days later the bank wrote him a letter. In March or April, 1925, the president of the bank personally interviewed Walters at his home about taking care of the note. Walters promised to talk to his wife, and said if she were willing they could fix it up some way. Walters also promised to see the president of the bank at the bank. In August the president of the bank again saw Walters, and about all Walters would say was he intended to pay if he were able, but he could not pay then. Suit was brought within less than six months after this interview.

Defendants say that if a plaintiff was ever required to use the utmost diligence in invoking proper remedy, the bank was obliged to do so in this case. Two reasons are given for this statement. The first reason is that two of the bank's officers were able lawyers—a fact which does not affect the principle involved. The second reason is that time elapsed after fictional notice of the fraud afforded by the record, and that further time elapsed after the bank learned of the fraud.

This court has often held that laches is not a mere matter of time, like limitation, but is a matter of equity, which takes cognizance of all the circumstances, including presence or absence of prejudicial consequences of delay. The following are illustrative cases, and there are many others: *Harris v. Defenbaugh,* 82 Kan. 765, 109 Pac. 681; *Golden v. Claudel,* 85 Kan. 465, 118 Pac. 77; *Dusenbery v. Bidwell,* 86 Kan. 666, 121 Pac. 1098; *Osincup v. Henthorn,* 89 Kan. 58, 130 Pac. 652; *City of Hutchinson v. Hutchinson,* 92 Kan. 518, 141 Pac. 589; *Watts v. Myers,* 93 Kan. 824, 145 Pac. 827. .

In this instance the bank's claim was not stale so that public policy forbade its assertion in court. No presumption of satisfac-

tion of Walters' debt could possibly be indulged. No evidence was lost, destroyed, or obscured which made maintenance of the bank's appeal to equity impractical, or the result doubtful. Nobody died, and no adverse right of any third person intervened. There was no evidence that the fraudulent grantee made improvements or expenditures, or otherwise changed her position to her detriment on the strength of acquiescence by the bank in the fraud. There was no evidence that she changed her position in any respect for any reason after the fraudulent deed was recorded. No fact was disclosed at the trial which made such delay as the bank indulged in, in seeking relief, unreasonable from the standpoint of equity.

If it were not so clear that the land in controversy should be appropriated to payment of the bank's judgment, we should be met by a sound rule of appellate practice. As indicated, laches is an equitable defense. Whether relief is barred by laches depends on all the circumstances of the particular case. Therefore, unless clear error, amounting in effect to abuse of discretion, is disclosed, the judgment of a district court denying effectiveness of asserted laches as a bar will not be disturbed. (*Hudson v. Herman*, 81 Kan. 627, 640, 107 Pac. 35.) In this instance the court found specially that the bank had not been guilty of laches, and the finding was well supported by the evidence.

The judgment of the district court is affirmed.