No. 32,575

A. O. WALLER, Receiver of the Pacific Christian Hospital,
*Appellant,* v. ARTHUR CAPPER, *Appellee.*

(53 P. 2d 836)

Opinion filed January 25, 1936.

*Albert M. Cole,* of Holton, *Clifford V. Cox, William F. Riley, John Inghram* and *Ehlers English,* all of Des Moines, Iowa, for the appellant; *Donald B. Evans,* of Eugene, Ore., of counsel.

*Hugh T. Fisher* and *Irwin Snattinger,* both of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff brought this action to recover on four written obligations for the aggregate sum of $750 and interest. Typical of each, except as to amounts and dates, was the following:

$500                    No. A 2070

"6% GOLD CERTIFICATE

ARTHUR CAPPER, Publisher

TOPEKA, KANSAS

"This certifies that Arthur Capper has received the sum of five hundred dollars from Henry Saunders, which amount is accepted by Arthur Capper, proprietor of the Capper publications, Topeka, Kansas, as a loan to him and

shall bear interest at the rate of six percent per annum, payable semiannually, from the date of issue shown hereon.

"The lender has the privilege of withdrawing the amount of this certificate and accrued interest, upon giving said Arthur Capper thirty days' notice.

"Arthur Capper has the privilege of taking up this certificate at any interest-paying date by giving thirty days' notice to the lender. Interest shall cease after the expiration of the thirty-day notice. Said notice shall be sent to the last known address of the lender by registered mail—registry receipt of postmaster at Topeka shall be accepted as full proof thereof.

"Issued Sept. 24, 1931.

"Not good unless countersigned by E. C. NASH.          ARTHUR CAPPER."

The pertinent facts developed by the pleadings and by stipulation of counsel were these:

Defendant sold the instrument set out above to one Henry Saunders, of Eugene, Ore. He also sold two similar instruments for $100 each and one for $50 to the same purchaser.

On and about December 9, 1931, Saunders was an inmate in the Pacific Christian Hospital, at Eugene, Ore. He was suffering greatly from cancer and was contemplating suicide. On that date he wrote the following note and placed it, together with the four instruments, in an envelope addressed to the hospital. It reads:

"Eugene, Dec. 9, 1931.

"Dear Friends: I leave this money in your hands for the hospital patients; they need it badly, poor suffering people in the hospital ward; some can't pay for treatment.          "HENRY SAUNDERS,

"Eugene, Route 2, Box 368.

"I have a son in Toronto City, Ontario, Canada. His name is W. N. Saunders.

"I must die; my agony is so terrible; I must die at once; stomach.

"My brother lives on motor route, Eugene, Ore."

On December 11, 1931, at 9 a. m. Saunders died, either of a self-inflicted wound or of his fatal malady. The stipulation of agreed facts states that Saunders mailed the envelope with its contents to the hospital "immediately prior to his committing suicide." The postmark shows the mailing date and time, "Dec. 11, 1931, 11 a. m." The hospital authorities came into possession of the Capper instruments, but their value was not appreciated, and eventually they passed into the possession of plaintiff as receiver of the hospital corporation, along with other documents of no particular value.

Ten days after the death of Henry Saunders his brother, George F. Saunders, was appointed administrator of his estate. About five months later, on May 3, 1932, the administrator addressed a letter

to the defendant, Arthur Capper, telling of Henry's death and that he was serving as administrator. The letter continued—

"My brother had certificates of the Capper Co. to the amount of $700 and I am unable to find the certificates, though I have made careful search. I wish to cash these certificates, and if you will send me the necessary bond I will have it executed and return to you, so that you can send me the money."

A bond was prepared and executed. It recited that the original instruments had been lost, that the administrator had applied for duplicates, and that he and his sureties bound themselves in the sum of $1,500 to hold Capper harmless of all loss and damage if the duplicates applied for were issued.

Promptly on receipt of this bond, duplicates of the original instruments were issued by Capper, and on June 20, 1932, they were redeemed at face value plus interest, $760.40.

About a year later the original certificates became a matter of correspondence between representatives of the hospital or its receiver and Capper; and eventually this lawsuit was instituted by the receiver to recover on them.

Plaintiff's petition alleged the pertinent facts, including the circumstances under which the instruments were delivered by the late Henry Saunders to the hospital.

Defendant's answer admitted his execution and sale of the instruments to Henry Saunders and the death of the latter, the appointment of the administrator, and the representation of the latter to defendant that Henry had died seized of the four instruments described, that they had been lost and could not be surrendered for payment; and—

"Defendant further states that on the 20th day of June, 1932, in accordance with the demand of the said George F. Saunders, as administrator, this defendant paid to said administrator the principal sum of $750 in full payment of the face value of said certificates 'A, B, C, and D' together with the sum of $10.40, the earned and unpaid interest due on said certificates to June 20, 1932. That the said administrator at that time was the lawful officer in charge of the estate of Henry Saunders, deceased."

Defendant further answered that the first intimation he received touching plaintiff's claim was on June 19, 1933, a year after duplicates of the originals had been issued and redeemed by payment in full.

Answering further, defendant alleged that the instruments were nonnegotiable; and that plaintiff paid nothing for them; and that defendant was not indebted to plaintiff in any sum thereon.

A jury was waived; the cause was argued on the pleadings and pertinent law; and the trial court gave judgment for defendant.

Plaintiff appeals. His counsel simply contend that under the pleadings and agreed facts his ownership of the instruments was indisputable, and no sufficient excuse for defendant's refusal to pay them is shown by the record. This argument is supplemented by consideration of the fact that defendant holds the bond of the administrator and sureties to protect him from loss and damage.

To this line of argument, counsel for the appellee reply, first, that there was no legal transfer of the instruments by Henry Saunders in his lifetime. According to our interpretation of the stipulation of counsel, however, that interesting question of fact went out of the case. That stipulation recites that Henry Saunders wrote the letter, placed it and the instruments in an envelope addressed to the Pacific Christian Hospital, and "mailed the same immediately prior to his committing suicide" and that the envelope was "either in the possession of the post-office department or of the hospital at the time of the death of Henry Saunders and not in his control."

It is settled law that when a letter is mailed it is in legal effect delivered to the addressee, particularly where the fact that it was received is not denied by the latter. (*Shriver v. National Bank et al.*, 117 Kan. 638, 232 Pac. 1062; *Ennis-Baynard Petroleum Co. v. Plainville Mill and Elevator Co.*, 118 Kan. 202, 235 Pac. 119; *Brandon v. Dawson*, 51 Mo. App. 237.) See, also, *American Surety Co. v. Blake*, 54 Idaho 1, 27 P. 2d 972, 91 A. L. R. 153 *et seq.*

Since there was a sufficient delivery prior to the death of the donor the rule of law pertaining to gifts *inter vivos* was satisfied (*Stevenson v. Hunter*, 131 Kan. 750, 754, 755, 293 Pac. 500), and the legal proposition touching the revocation of an agent's authority when the authorized act is not completed before the death of the principal does not arise in this case. The fact that Saunders was dead two hours before the envelope containing the instruments was postmarked does not prove that the envelope and its contents were not in the possession of the government mail service until that exact time.

Another point urged by appellee is that the letter of Henry Saunders, written two days before his death, reveals that he was not in mental or physical condition to handle his affairs rationally. An examination of the pleadings and the stipulated facts does not show that this point was fairly raised in the trial court. Conse-

quently it cannot be considered in this appeal. (*Clark v. Lindley Motor Co.*, 126 Kan. 419, 268 Pac. 860; *Lindberg v. Pence View Farming Co.*, 140 Kan. 138, 144-146, 33 P. 2d 1102.)

Another point urged by the appellee to sustain the judgment is based on the doctrine of estoppel. He summarizes the facts on which such estoppel might rest—the receiver had the Capper instruments in his possession, he knew an administrator had been appointed for Saunders' estate and that under the local law all claims against that estate had to be presented within six months; his failure to assert ownership and his long continued silence, which induced defendant to believe that he might safely pay the lawful administrator, and the administrator's collection and disbursement of the proceeds in accordance with the pertinent law of Oregon. There is a rule of law that while silence alone will not raise an estoppel, such silence may sometimes operate as an estoppel where there is a duty to speak and an opportunity to speak. (21 C. J. 1150 *et seq.*) But it was not shown in this case that the hospital corporation or its receiver had any claim against the estate of Saunders which would require either of them to pay attention to the administration of the Saunders estate; and this court holds that the rule of estoppel should not be applied here to bar plaintiff's cause of action.

Yet another point suggested is that since the instruments were nonnegotiable and Capper had no notice of any change of ownership, he had a right to pay the personal representative of Saunders, the administrator. But the nonnegotiability of the instruments did not prevent their being the subject matter of a gift to the hospital. Nonnegotiability would permit defenses which the maker might wish to raise against them, but there were no such defenses. Saunders no longer owned them after they were delivered by mailing to the hospital; and the administrator only obtained legal title to the personal property which Saunders did own at his death—not personalty which he had given away two hours, or two days, or at any time, prior to his death.

The last point urged in support of the judgment is laches. A majority of this court decline to admit that laches existed in this case. The instruments had no fixed time of payment. Only on thirty days' notice could the holder require payment to be made. The lapse of one year, eight months, twenty-five days between the date of issue and the date plaintiff opened correspondence with defendant looking to their payment, considered alone, would not sup-

port a plea of laches. (*Harris v. Defenbaugh*, 82 Kan. 765, 109 Pac. 681.) Nor do we think the fact that in the interim defendant issued duplicates to the administrator and then redeemed them, and that the estate was settled prior to the time plaintiff asserted his claim of right as owner of the original instruments, can be recognized as sufficient to support a plea of laches.

It follows that the judgment must be reversed and the cause remanded with instructions to enter judgment in favor of plaintiff. It is so ordered.

DAWSON, J. (dissenting): On the present ruling on the plea of laches I cannot concur. This court has hitherto recognized that the rights of third parties should not be ignored in disposing of a question of laches. In *National Bank v. Walters*, 129 Kan. 49, 51, 52, 281 Pac. 868, in considering a plea of laches this court said:

"This court has often held that laches is not a mere matter of time, like limitation, but is a matter of equity, which takes cognizance of all the circumstances, including presence or absence of prejudicial consequences of delay. The following are illustrative cases, and there are many others: *Harris v. Defenbaugh*, 82 Kan. 765, 109 Pac. 681; *Golden v. Claudel*, 85 Kan. 465, 118 Pac. 77; *Duzenberg v. Bidwell*, 86 Kan. 666, 121 Pac. 1098; *Osincup v. Henthorn*, 89 Kan. 58, 130 Pac. 652; *City of Hutchinson v. Hutchinson*, 92 Kan. 518, 141 Pac. 589; *Watts v. Meyers*, 93 Kan. 824, 145 Pac. 827.

"In this instance, the bank's claim was not stale so that public policy forbade its assertion in court. . . . Nobody died, and no adverse right of any third person intervened, . . . No fact was disclosed at the trial which made such delay as the bank indulged in, in seeking relief, unreasonable from the standpoint of equity.

". . . Laches is an equitable defense. Whether relief is barred by laches depends on all the circumstances of the particular case."

In Merwin's Principles of Equity, 512, it is said:

"From the nature of the case, no rigid rule can be laid down as to what delay will constitute laches; every suit must depend upon its own circumstances. But whenever the delay fairly justifies the inference of acquiescence in the adverse claim, or whenever it has been of such a character as to induce other persons to alter their circumstances or conduct, so that the element of estoppel is introduced, a court of equity will commonly hold the delay to operate as an absolute bar."

If the unique obligations sued on in this case were ordinary negotiable instruments it is clear that plaintiff's failure to present them for payment within a reasonable time would have justified defendant in paying them as lost instruments on the showing made by the personal representation of the original payee. (*Bare v. Ford*,

74 Kan. 593, 87 Pac. 731, 118 A. S. R. 336.) The interest was payable semiannually, and plaintiff let more than three interest periods pass without asserting any claim for either interest or principal.

It is no answer to the plea of laches to stress the fact that defendant had the forethought to take a bond from the administrator before he issued duplicates and redeemed them. What about the right of the bondsmen? How can they recoup the amount of their liability now that the estate of Saunders is closed? It is a familiar rule of equity and good conscience that where some one of a number of innocent parties must sustain a loss, that loss is most justly cast upon the one whose want of diligence gave rise to the circumstances which occasioned the loss. In 10 R. C. L. 400 it is said:

"It is also a well-recognized principle of equity that if one is so negligent in the pursuit of his remedy that the rights of third parties have been permitted to intervene to such an extent as to be materially affected if he should prevail, relief will not be granted."

Clearly the plaintiff's want of diligence brought about the present predicament of innocent third parties, and I would affirm the judgment of the trial court against him with a clear conscience.

SMITH, J., joins in this dissent.